**Joseph DeANGELIS**

v.

**RHODE ISLAND ETHICS COMMISSION and Richard W. Morsilli, Chairperson.**

**No. 93–577–MP.**

Supreme Court of Rhode Island.

April 10, 1995.

Linda E. Buffardi, Cranston, for plaintiff.

Gary Yesser, Richard Galli, Martin Healey, R.I. Ethics Com'n, for defendant.

## OPINION

WEISBERGER, Chief Justice.

This case comes before us on a petition for certiorari filed by Joseph DeAngelis (petitioner) which seeks review of a decision of the Rhode Island Ethics Commission (commission) denying his motion to dismiss complaints that had been filed with the commission and upon which findings of probable cause had been made. We grant the petition for certiorari and quash the decision of the commission. The facts of the case insofar as pertinent to this petition are as follows.

In 1991 petitioner held the office of Representative in the General Assembly and also served as Speaker of the House of Representatives of the State of Rhode Island. At that time, the General Assembly was in the process of considering legislation to relieve a catastrophic situation which had arisen as a result of the closing of forty-five credit unions and other financial institutions by the governor on January 1, 1991. This action by the governor was based upon the perceived insolvency of many of the institutions, the acknowledged insolvency of the Rhode Island Share and Deposit Indemnity Corporation (RISDIC), their private insurer, and the unavailability of federal insurance to protect their depositors.

On February 4, 1991, one Susan Bressette filed a complaint with the commission against petitioner. On March 5, 1991, one Peter C. Marra also filed a complaint with the commission against petitioner. These complaints generally alleged that petitioner had committed ethical violations by participating in the discussions and consideration of a body of legislation which resulted in the formation of the Rhode Island Depositor Economic Protection Corporation (DEPCO). The petitioner denied the allegations.

During the year 1991 legislation was adopted effective June 16, 1991, G.L.1956 (1990 Reenactment) § 36–14–12(c), as amended by P.L.1991, ch. 177, § 1, which required the commission to make findings of

probable cause, and if probable cause was found, to prepare written findings within 180 days of the receipt of a written complaint, with a possibility of two extensions of sixty days each for good cause.

The commission at that time consisted of fifteen members of whom eight members constituted a quorum. The staff of the commission considered the complaints and presented a report to an investigating committee of the commission on October 31, 1991. On December 13, 1991, the investigating committee found that probable cause existed to find that petitioner on a number of occasions knowingly and willfully violated five provisions of the Code of Ethics in Government (code of ethics). The findings of the investigating committee were then referred to an adjudicative panel pursuant to the provisions of § 36–14–13 then in effect. The adjudicative panel on February 25, 1992, issued a notice of hearing, setting April 16 and 30, and May 7 and 21, 1992 as hearing dates to adjudicate the matter.

On March 2, 1992, petitioner objected to these hearing dates and pointed out that they posed a significant conflict with his duties as Speaker of the House of Representatives. The dates selected by the adjudicative panel coincided with the busiest period of the legislative session at a critical time for the consideration of some of the most important pending bills. The adjudicative panel responded to petitioner's objection by granting a continuance until July 2, 1992. No hearing took place on this date.

Effective July 21, 1992, the Legislature enacted and the governor signed into law a statute which completely modified the commission and made sweeping substantive and procedural changes to the ethics statutes. This legislation was designated P.L.1992, ch. 436 and has since been codified as §§ 36–14–5,–8,–9,–12,–13 and –14.

This statute reduced the commission from fifteen members to nine members. The new commission could act with a quorum of five members. Before the 1992 amendment, an investigating committee composed of six members would investigate each complaint to determine the existence of probable cause to support the allegations in the complaint, and if probable cause was found, to prepare written findings. Pursuant to the 1992 amendment, investigating committees were abolished and the commission as a whole, or a quorum thereof, was given the duty of conducting investigations. The same commission was clothed with the power to adjudicate the merits of allegations of violations of the code of ethics. Prior to the 1992 amendments, at least five members of the commission who had attended all hearings in their entirety were required to make a determination of violation. Subsequent to the 1992 amendments, a majority of the commission members who had attended all hearings could make such a finding of violation. The new statute also increased the maximum penalty from $10,000 per violation to $25,000 per violation.

Section 3 of chapter 436 of the Public Laws of 1992 provided for the procedural requirements relating to cases previously pending before the commission. This section read as follows:

*"Cases pending in which there has been a finding of probable cause prior to the effective date of this act shall be adjudicated in accordance with the procedure in effect prior to the enactment of this act by the commissioners appointed pursuant to the preceding statute.* Cases under investigation and complaints filed after the effective date of this act containing allegations about events which occurred prior to the effective date of this act shall be investigated according to procedures established by this act." (Emphasis added.) P.L.1992, ch. 436, § 3.

At the time that this new statute went into effect, the previous commission had been encountering quorum problems due to the existence of two vacancies on the commission and due to the expiration that month of the five-year terms of three additional commissioners (under the statute, commissioners appointed to five-year terms could not be reappointed). In petitioner's case, the commission was also faced with a number of recusals by commissioners appointed under the prior statute, further contributing to the commission's inability to achieve a quorum. As a result of these problems, the chairperson of the com-

mission requested the governor to fill the two existing vacancies. Apparently the governor declined to make such appointments. Meanwhile the adjudicative panel after hearing a motion to dismiss on July 6, 1992 voted to delay consideration of the motion for thirty days.

As pointed out in the commission's brief, the enactment of P.L.1992, ch. 436 placed the complaints pending against petitioner in a procedural limbo. The statute clearly required that complaints upon which probable cause had been determined prior to the July 21, 1992 effective date of the act be decided by the commission as it existed prior to the passage of P.L.1992, ch. 436, and according to the procedural requirements then in effect. In light of the governor's failure to appoint additional members to the former commission, the executive director of the commission decided upon an innovative scheme to avoid the clear provisions of the statute. He wrote to each of the complainants and suggested that they withdraw their previously filed complaints and immediately refile them as new complaints with the new commission. The complainants cooperatively obliged the executive director and filed new complaints which were received by the commission on August 11 (Bressette) and either August 21 or August 31 (Marra), 1992.[1] The commission assigned new docket numbers, but in all other respects the complaints were identical to those that had been filed in 1991. From this point the commission began again to process the complaints. The commission claims that the investigations of both complaints were completed prior to June 7, 1993. This date was the deadline for completion of the investigation of the refiled Bressette complaint after the commission had granted

two sixty-day extensions, authorized by statute. The petitioner disputes that the investigations were in fact completed by this deadline.[2]

Commission counsel submitted a report August 17, 1993, stating that there was sufficient evidence for the commission to proceed to trial on the question of whether petitioner's activities constituted violations of the code of ethics. The petitioner moved to dismiss the two refiled complaints on numerous grounds including the violation of the 180-day rule contained in the new statute (as well as in the former statute).[3]

On October 5, 1993, the commission denied petitioner's motion to dismiss and issued a finding that probable cause existed to support certain allegations set forth in the refiled complaints. The commission set a hearing date for December 15, 1993. It is from the order denying his motion to dismiss the refiled complaints that petitioner sought review by way of certiorari.

In support of his petition for certiorari, petitioner raises a number of issues. We shall consider only the first issue, since we regard that issue as dispositive.

## WAS THE WITHDRAWAL AND REFILING OF THE COMPLAINTS SUFFICIENT TO EVADE THE PROVISIONS OF P.L.1992, CH. 436, § 3?

■ This court has often stated that when a statute is expressed in clear and unambiguous terms, the work of judicial interpretation is at an end. In those circumstances the statute must be construed in accordance with the plain and literal meaning of the language contained therein. *See, e.g., In re Barnacle,* 623 A.2d 445, 450 (R.I.1993); *Providence Journal Co. v. Sundlun,* 616 A.2d

1. It is disputed whether the refiled Marra complaint was actually received by the commission on August 21 or on August 31, 1992. The complaint bears two different commission date stamps, reflecting each of these two dates, although the stamped time of receipt corresponding to the August 21, 1992 date is an unlikely 12:00 a.m. Whether the actual date of receipt of the complaint was August 21 or August 31 would be a significant issue with respect to petitioner's claims that certain statutory time limitations were violated in the course of the commission's investigation. However, our disposition of peti-

tioner's first claim of error renders consideration of this question moot.

2. This issue is also rendered moot by our disposition of petitioner's first claim of error.

3. The new statute required that the commission complete its investigation within 180 days of receipt of a written complaint (with a possibility of no more than two sixty-day extensions for good cause). General Laws 1956 (1990 Reenactment) § 36–14–12(c), as amended by P.L.1992, ch. 436, § 1.

1131, 1135 (R.I.1992); *Ellis v. Rhode Island Public Transit Authority,* 586 A.2d 1055, 1057 (R.I.1991); *Krupa v. Murray,* 557 A.2d 868, 869 (R.I.1989). As we read the provisions of P.L.1992, ch. 436, § 3, we are led ineluctably to the conclusion that the Legislature meant precisely what it said. There can be no other meaning attributed to the statute than the requirement that cases pending in which there had been a finding of probable cause prior to the effective date of the act "shall be adjudicated in accordance with the procedure in effect prior to the enactment of this act by the commissioners appointed pursuant to the preceding statute." P.L.1992, ch. 436, § 3. There is no way to rewrite this language by interpretation. It should be noted that petitioner in this case did not participate in the formulation, consideration, and passage of this statute, but had recused himself from involvement therein.

The attempt by the executive director of the commission to evade the mandatory terms of the statute by the transparent device of persuading the complainants to withdraw and refile their complaints was an ill-disguised effort to set the statute at naught and disregard its terms. It can scarcely be argued that the commission is empowered to revise or ignore the statute to accommodate a prosecution which does not come within the reach of its terms.

The commission in its brief argues that it was unable to comply with the statute because of the unwillingness of the governor to make the necessary additional appointments. Argument is found in both briefs concerning the availability of the remedy of mandamus by which the commission could have compelled the governor to make the necessary additional appointments. Although this argument is interesting, we do not feel that it can in any way affect the outcome of this case. Whether the governor could have been compelled to make the appointments is not an issue. Certainly petitioner here is not responsible for the failure of the governor to appoint new members to fill the vacancies on the commission, even if the continued vacancies made it impossible to implement the provisions of P.L.1992, ch. 436, § 3. This did not give license to the commission to nullify the statute by the device of arranging for the withdrawal and refiling of the complaints.

■ The Rhode Island Ethics Commission like all other agencies of the state is subject to enacted statutory law which is presumed to be valid. Any challenge to that validity must be presented to this court which is the final arbiter of the validity or interpretation of statutory law. While it may occur from time-to-time that a statute may make prosecution of a particular complaint difficult or even impossible, any revision of such statute must be made by the Legislature. Prosecutorial authorities cannot evade statutes because they find it inconvenient or difficult to comply with their provisions. The commission is no exception to this general rule. Consequently, the refiled complaints were invalid at their inception. Life could not be rekindled in them by the commission's taking an additional year and one-half to reconsider and process them through procedures directly contra to the provisions of P.L.1992, ch. 436, § 3.

In light of this determination, it is not necessary to consider whether the commission's activities in regard to the refiled complaints constituted a violation of the newly enacted statute or a violation of the petitioner's due process rights. The refiled complaints were invalid ab initio and no prosecution could be based thereon.

For the reasons stated, the petition for certiorari is hereby granted. The decision of the commission denying the petitioner's motion to dismiss the pending complaints is quashed. The papers in the case may be remanded to the commission with our decision endorsed thereon and with directions to dismiss said complaints.