Steven M. CLARKE

v.

Richard MORSILLI et al.

No. 98–110–M.P.

Supreme Court of Rhode Island.

July 14, 1998.

Patrick J. Quinlan, Providence, for plaintiff.

Amelia E. Edwards, Katherine Tammelleo, Cranston, for defendant.

Before BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before a panel of the Supreme Court on June 16, 1998, pursuant to an order directing both parties to appear and to show cause why the issues raised should not be summarily decided. The Rhode Island Ethics Commission (commission) seeks this Court's review of a final judgment and order of the Superior Court, which reversed a decision and order of the commission because of the commission's failure to comply with the statutorily imposed time limitations set forth at G.L.1956 § 36–14–12.

Having heard the oral argument of each party's counsel and examined the memoranda submitted to this Court, we are of the opinion that cause has not been shown, and therefore, the issues shall be decided at this time.

## I

### Facts and Travel

On February 25, 1994, the commission received a complaint from Roger Anthony (Anthony) charging Steven M. Clarke (Clarke), an appointed member of the Rhode Island Board of Registration for Professional Engineers (the board), with multiple violations of the Rhode Island Code of Ethics stemming from Clarke's participation as a member of the board in suspending Anthony's company from the practice of engineering for one year. In his complaint Anthony disputed the propriety of Clarke's participation in those license suspension proceedings because Clarke was at the time a business competitor who stood to gain from the suspension of Anthony's company's license. In fact Clarke's firm, Commonwealth Engineering, replaced Anthony's company on a construction project in the town of Narragansett.

Upon receipt of Anthony's February 25, 1994 verified complaint, the commission sent notice to Clarke who, in turn, denied the allegations therein. The commission then pursuant to § 36–14–12 subsequently commenced an investigation in order to determine the merit of Anthony's charges. On August 19, 1994, the commission moved for a 60–day time extension pursuant to § 36–14–12(c) in order to continue the Clarke investigation that would have otherwise required completion by August 24, 1994, 180 days from the receipt of the written complaint.[1] The commission's motion for an extension was granted, and the investigation was extended until October 23, 1994. On October 12, 1994, the commission then sought and received the issuance of a second sixty-day time extension so that the Clarke investiga-

---

1. General Laws 1956 § 36–14–12(c), entitled "Investigative powers of the commission," provides in pertinent part:

    "Upon receipt of a written complaint alleging a violation of this chapter, the commission shall within one hundred eighty (180) days of receipt of the written complaint complete its investigation; provided that, the commission may, for good cause shown, grant no more than two (2) extensions of sixty (60) days each."

tion could then continue until December 22, 1994.

On December 28, 1994, six days after the statutorily imposed deadline for the completion of the investigation, the commission filed an "Investigative Report and Motion to Amend Complaint," in which the commission summarized its findings relevant to the Clarke investigation and introduced new charges against Clarke for his participation as a member of the board in investigating James Salem (Salem), an individual who had falsely held himself out to be a professional engineer. In 1992 Salem performed a traffic impact study for the town of Cumberland. In conjunction with this project Salem planned to testify before the town of Cumberland's Zoning Board of Review. Upon complaint and investigation the board informed Salem that he could testify before a zoning board of review only if certain conditions were met. As a result of the board's intervention Salem was never paid for his work on the Cumberland project, and he was subsequently replaced on the project by Clarke's firm, Commonwealth Engineering.

On January 19, 1995, the commission notified Clarke concerning both the scheduling of a probable cause hearing and his right to appear and contest the charges against him relative to both the Anthony and Salem matters. On March 29, 1995, the parties appeared before the commission and presented their cases. On March 30, 1995, the commission issued an "Order and Finding of Probable Cause" which reflected the commission's determination that probable cause existed to support both the original charges relative to the Anthony matter as well as the additional charges relative to the Salem matter. On April 3, 1996, formal hearings commenced on both the Anthony and Salem charges. Both prior to and during these hearings, Clarke moved to dismiss the charges against him arguing in support of a first prehearing motion to dismiss that the commission's investigation was impermissibly concluded after the

statutory deadline set forth at § 36–14–12(c), and, in support of his second motion to dismiss, made during the hearing, that he was never served with a copy of the amended complaint as required by § 36–14–12(c)(5) .[2] Both of Clarke's motions to dismiss were denied by the commission.

On July 26, 1996, the commission issued a written decision and order. The commission dismissed the original charge lodged against Clarke as to the Anthony matter finding that there was no evidence to support a finding that Clarke had violated the code of ethics. On the amended Salem charges the commission found Clarke guilty of violating the code of ethics by his participation in investigative and enforcement actions against Salem while Clarke sat as a member of the board.

On August 5, 1996, Clarke filed a timely appeal of the commission's decision and order in the Superior Court via the Administrative Procedures Act. Thereafter, a Superior Court justice, sitting without a jury, held that the commission had impermissibly exceeded the statutory deadline for completing its investigation by failing to make a finding of probable cause by December 22, 1994. The trial justice further found that the commission had never made service of its amended complaint upon Clarke that introduced the Salem charges against him as required by § 36–14–12(c)(5) and that, therefore, the charges against Clarke relating to the Salem matters included in the December 28, 1994 amended complaint were a nullity. On February 10, 1998, a final judgment and order was entered in the Providence County Superior Court, reversing the commission's decision and order against Clarke. On March 2, 1998, the commission filed a petition with this Court, seeking the issuance of a writ of certiorari, and writ issued on April 17, 1998.

## II

### Analysis

In this case the commission has interpreted the "complete its investigation" language

---

**2.** General Laws 1956 § 36–14–12(c)(5) entitled, "Investigative powers of the commission," states in pertinent part

"If the commission, during the course of its investigation, has probable cause to believe that violations of this chapter, other than those contained in the complaint, have been commit-

ted, it may, upon its own motion, amend the complaint to include the violations. The commission shall, within seventy-two (72) hours of any amendment, cause a copy of the amended complaint to be served *** upon any person alleged in the amended complaint to have committed a violation of this chapter."

of § 36–14–12(c) to mean that it may simply state in conclusory fashion that it has finished its investigation without making a determination as to whether probable cause exists to move forward beyond the investigatory stage on the charge or charges contained in the complaint. The trial judge found this interpretation contrary to both the plain language of § 36–14–12 and the legislative intent embodied in that statute. Rather, the trial judge found that the "complete its investigation" language at issue means that the commission must make a finding as to whether probable cause exists to support the allegations of an ethics complaint within the 180–day statutory time limit subject to either one or two 60–day time extensions. We agree.

The commission, as an administrative agency, is bound by the acts of the General Assembly that empower it. In the course of performing its discrete functions, the commission, like any other administrative agency, is called upon both to interpret certain acts of the Legislature and to promulgate applicable regulations not inconsistent with its delegated authority. *Lerner v. Gill,* 463 A.2d 1352, 1358 (R.I.1983). The Judiciary, however, sits as "final arbiter of the validity or interpretation of statutory law" as well as of any agency regulations promulgated to administer that law. *DeAngelis v. Rhode Island Ethics Commission,* 656 A.2d 967, 970 (R.I.1995).

After examining both the language "complete its investigation" and the surrounding statutory framework and after carefully considering the legislative purposes embodied in the statute at issue, we conclude that the "complete its investigation" language was intended by the General Assembly to mean that the commission is required to make an actual finding of probable cause within the 180–day statutory time limit, subject to either one or two 60–day time extensions which may be granted upon a showing of good cause. It is, after all, the determination by the commission as to whether probable cause exists to pursue the ethics complaint that both marks for certain the completion of a commission investigation and serves to ap-

prise the subject of the investigation of the commission's findings. Without an event to denote an investigation's conclusion, both the subject of the investigation and the public at large are left to wonder exactly when the investigatory phase has ended.

We had occasion in *Roadway Express, Inc. v. Rhode Island Commission for Human Rights,* 416 A.2d 673 (R.I.1980), to consider similar investigative and complaint time requirements applicable by statute to the Rhode Island Commission for Human Rights. In *Roadway* we stated:

"We believe that the Legislature, consistent with the language of § 28–5–18, intended that the one-year issuance period operate as a check on the commission's broad discretion to select the time to issue complaints. *** The time limit imposed by § 28–5–18 also ensures that persons charged with violating the Act will receive notice of those charges within one year of the alleged violation. Prompt notification will enable such persons to investigate alleged violations and to preserve evidence necessary to conciliate or to rebut the commission's charges." 416 A.2d at 676.

We reaffirmed that position in *Wayne Distributing Co. v. Rhode Island Commission for Human Rights,* 673 A.2d 457, 461 (R.I. 1996). We note also that when the Legislature first added the 180–day complaint investigation time limitation to the commission's proceedings,[3] it was certainly aware of what we had said in *Roadway* pertaining to statutory time limitations imposed upon state agencies to investigate and complete complaint procedures, and did nothing at that time to indicate that the ethics commission complaint time limitation should be treated any differently from our reasoning and holding in *Roadway.*

The commission, for its part, urges upon us an interpretation of the statute that would allow the commission to simply state, within 180 days, that it had completed its investigation without ever having made any finding or coming to any resolution as to whether or not probable cause to further pursue the complaint was found or existed. If we were to accept that interpretation, the subject of the

---

3. Public Laws 1991, ch. 177, § 1.

"completed" investigation required in the statute would remain in limbo, waiting for as long a time as the commission desired before the results of the "completed" investigation were finally divulged. As such, this interpretation by the commission is directly contradictory to the Legislature's clear purpose of ensuring that commission investigations come to an expeditious conclusion. That purpose is manifested by the Legislature's decision to impose its 180–day statutory limitation, subject to the two 60–day extensions, upon the commission's investigatory activities. As the commission's interpretation of § 36–14–12(c) frustrates this purpose, we must reject it.

For the reasons set forth above, the commission's petition for certiorari is denied, and the writ heretofore issued is quashed. The judgment and order of the Superior Court is affirmed, and the papers of the case shall be remanded to the Superior Court.

WEISBERGER, C.J., and LEDERBERG, J., did not participate.