DECISION
This case is before the Court on appeal from a decision of the Rhode Island Labor Relations Board (Board) finding that the Fraud Prevention Unit of the Worker's Compensation Division (Unit) constitutes a proper unit for collective bargaining purposes. Jurisdiction is pursuant to R.I.G.L § 42-35-15.
 Facts/Travel
The plaintiff, the State of Rhode Island Department of Administration (plaintiff), is an employer as defined in the Rhode Island Labor Relations Act. See R.I.G.L. § 28-7-1 et seq. The defendant, the Board, is a Rhode Island administrative agency. The defendant, the Rhode Island Alliance of Social Service Employees (Union), is a labor organization which is located in Providence, Rhode Island.
In 1992, the Rhode Island General Assembly created the Unit which was charged with the duty of "formulat[ing] an integrated state plan to reduce and prevent fraud arising out of claims made pursuant to the workers' compensation laws of this state." See
G.L. § 42-11-15.
The Unit is composed of nine individuals to include one (1) Chief Investigator, six (6) Fraud Investigators, one (1) Investigative Attorney, and one (1) clerical employee.
On (or about) September 12, 1994, the Union filed a petition for investigation and certification of representatives with the Board desiring to be certified as the Unit's exclusive bargaining agent, and seeking a determination that members of the Unit constituted an appropriate bargaining unit.
On (or about) January 20, 1995, the board held an informal conference in an attempt to arrive at an agreement regarding a consent election. No agreement was reached, so the matter was scheduled for a formal hearing which was held on (or about) May 2, 1995. All parties were present and were represented by counsel. On (or about) July 17, 1997, the board issued a decision granting the Unions petition directing that an election be conducted within ninety (90) days. Plaintiffs filed a statement of objection to the board's decision on (or about) August 8, 1997.
On (or about) September 4, 1997, an election was conducted for the unit employees. Following the election, the Union was designated as the official bargaining representative for the Unit, and on (or about) September 9, 1997, the board filed a certification of representatives. The Plaintiff filed the instant appeal on October 8, 1997.
The plaintiff is now properly before the court, having preserved the right to appeal by filing an objection to the board's decision. See Barrington School Comm. V. Labor Rel. Bd.,608 A.2d 1126, 1132 (R.I. 1992). The plaintiff contends that the board erred in finding that the Unit constitutes a proper unit for collective bargaining purposes and in ordering that an election be conducted. Specifically, plaintiff argues that there was no evidence demonstrating a community of interest between the employees and other members of the union, that the Chief Investigator is a supervisor whose position does not properly belong in the bargaining unit, that the Clerical position is that of a confidential employee, and that the board's failure to comply with the statutory time periods outlined in G.L. §28-7-9 (b)(5) requires a reversal of the board's decision.
 Standard of Review
The review of a decision of the Commission by this Court is controlled by R.I.G.L § 42-35-15 (g), which provides for review of a contested agency decision:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Courts review is limited to determining whether substantial evidence exists to support the Commissions decision. Newport Shipyard v. RhodeIsland Commission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897. (Quoting Caswell v.George Sherman Sand Gravel Co., 120 R.I. 1981, 424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v. Dept.of Employment Security, 414 A.2d 480, 482 (Rd. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resources Management Council,434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts.Carmody v. R.I. Conflicts of Interests Commission, 509 A.2d at 458. The Superior Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence. Rhode Island Public Telecommunications Authority, etal. v. Rhode Island Labor Relations Board, et al., 650 A.2d 479, 485 (R.I. 1994).
 Determination of a Bargaining Unit
The plaintiff argues that the board erred in granting the unions petition for investigation and certification. Specifically, plaintiff contends that there was no evidence demonstrating a community of interest between the employees and other members of the union. The defendants disagree with plaintiff's position, arguing that the proposed unit is appropriate for collective-bargaining purposes.
In R.I. Public Telecommunications Authority the Rhode Island Supreme Court discussed the issue of determination of bargaining unit membership for collective-bargaining purposes. Id. at 486. In its decision, the court noted the policy of the NLRB: "When determining the membership of units for collective-bargaining purposes, the NLRB has as its primary concern the grouping together of "`only employees who have substantial mutual interest in wages, hours, and other conditions of employment.'" Id.
(quoting Fifteenth Annual Report of the NLRB, 39 (1950)). "In making such a determination, the board is not required to choose the most appropriate bargaining unit but only an appropriate bargaining unit." Id. The court adopted the community of interest doctrine, utilized by the NLRB, in order to decide if employees in a unit are "sufficiently concerned with the terms and conditions of employment so as to warrant their participation in the selection of a bargaining agent." Id.
In determining whether there exists a community of interest, the court in R.I. Public Telecommunications Authority adopted factors relied on by the NLRB. Those factors are:
 "1. Similarity in scale and manner of determining earnings,
 2. Similarity of employment benefits, hours of work, and other terms and conditions of employment,
 3. Similarity in the kind of work performed,
 4. Similarity in the qualifications, skills, and training of the employees,
 5. Frequency of contact or interchange among employees,
 6. Geographic proximity,
 7. Continuity or integration of production processes,
 8. Common supervision and determinations of labor relations policy,
 9. Relationship to the administrative organization of the employer,
 10. History of collective bargaining,
 11. Desires of the affected employees; and
 12. Extent of union organization." Id.
After review of the record this Court finds substantial evidence to support the board's decision. There is sufficient evidence from which this Court may infer that there existed a community of interest among all nine members of the unit. First, the positions in the Unit were created by the same statute; that statute being G.L. § 42-11-15. Also, the Unit has a common purpose; that is, "to formulate an integrated state plan to reduce and prevent fraud arising out of claims made pursuant to the worker's compensation laws of [Rhode Island]." See G.L. §42-11-15 (a). Finally, all of the positions in the unit, according to the statute, are positions in the unclassified service. Id. In upholding this particular portion of the board's decision, this Court stresses that the issue at bar is whether an appropriate unit exists and not one of accretion.
 Supervisor
The plaintiff argues that the Chief Investigator is a supervisor whose position does not properly belong in the bargaining unit. The defendants contest plaintiff's argument contending that the Chief Investigator is not a supervisor whose position is excludable from the bargaining unit. In a rescript, this Court previously discussed the standard for supervisor. SeeNarragansett Bay Water Quality Management District Commission v.Rhode Island Labor Relations Board, et al., C.A. No., 97-3923, filed June 26, 1998, Cresto, J. The Court will reiterate that same standard and discussion here.
In defining the term supervisor, the Rhode Island Supreme Court has looked to federal law for direction. Accordingly, a supervisor is defined as
 "`any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature,
but requires the use of independent judgment.'" (Emphasis Added.) Bd. of Trustees v. RI State Labor Rel. Bd., 694 A.2d 1185, 1189 (R.I. 1997) (quoting 29 U.S.C. § 152
(11)).
See also Fraternal Order of Police, Westerly Lodge No. 10 v. Townof Westerly, 659 A.2d 1104, 1108; State v. Local No. 2883,AFSCME, 463 A.2d 186, 190, n.4 (R.I. 1983). "Managers and supervisors are those who carry out and often help formulate the employers policies." Local No. 2883, 463 A.2d at 191. As such, the "inclusion of managerial and supervisory employees in a collective-bargaining unit would upset the delicate balance of power between management and labor." Bd of Trustees,
694 A.2d 1189 (citing Local 2883, 463 A.2d at 190) (discussing NLRB v.Bell Aerospace Co., Division of Textron, Inc., 416 U.S. 267, 94 S.Ct 1757, 40 L.Ed.2d 134 (1974) and NLRB v. Yeshiva University,444 U.S. 672, 100 S.Ct. 856, 63 L.Ed.2d 115 (1980)). "Managerial and supervisory employees may not engage in collective bargaining." Bd. of Trustees, 694 A.2d at 1190 (citation omitted.)
The Rhode Island Supreme Court has given examples of employees vested with "managerial" or "supervisory" authority. InLocal No. 2883 the court found that a school superintendent was clearly a "supervisory and/or managerial employee." Id. at 191. In arriving at this conclusion, the court noted the superintendents panoply of duties:
 "Doctor Smith's job description required him explicitly to perform supervisory and managerial duties. In general he was required to `plan, organize, coordinate and direct the work' of all staff at the Ladd School. Among other things, he was required to `be responsible for the work of the staff' to `consult with superiors relative to the policies and objectives of the institution,' and to `make rules and regulations governing the work of all services of the institution.'" Id. at 191, fn. 7.
The court concluded the superintendent could not be a member of a bargaining unit. In Westerly Lodge #10, our Supreme Court found that members of the Westerly Police Department, specifically police captains' and lieutenants', were "supervisory or managerial personnel." Id. at 1108. Here, the court noted the captains and lieutenants responsibilities:
 "The responsibility of lieutenants and captains to assume the role of chief under certain conditions in the Westerly police department makes these officers supervisory or managerial personnel. Their responsibilities to discipline, command, and adjust grievances of lower ranking officers further support this conclusion, in addition to their duties to effectuate departmental policy and make recommendations for certain actions regarding personnel." Id.
The court concluded that these members of the Westerly Police Department should be excluded from the collective bargaining unit.
Most recently, in Bd. of Trustees the Rhode Island Supreme Court gave an example of employees who were not supervisors within the meaning of 29 U.S.C. § 152 (11). In arriving at this decision, the court declined to "reiterate each of the board's findings," not[ing] only that none of the library's four full-time employees had the authority to hire or to firesubordinates, to discipline them, or to adjust employeegrievances." Id. at 1190 (emphasis added.) Classifying the supervisory authority held by the four employees as "`merely routine or clerical [in] nature,'" the court concluded that the employees could partake in the library's proposed collective bargaining unit. Id.
In the instant matter, the board noted the responsibilities of the Chief Investigator, Mr. Groeneveld. "The Chief Investigator's position provides for supervision of the Clerical and Investigative staff, the management and development of a filing system, coordination of data entry procedures, preparation of written reports as required, and the maintenance of a case management program." See Decision at 3. After a review of the record, this Court finds that the Chief Investigator's position is not supervisory so as to warrant exclusion from collective bargaining. Mr. Groeneveld's position lacks the recognized indicia of a person's acting in an administrative capacity. These indicia significantly include the power to hire, to fire, to discipline and to adjust grievances. See Bd of Trustees, 694 A.2d at 1190.
A review of the record demonstrates that Mr. Groeneveld has no authority to fire or to discipline. In fact, when asked, Mr. Groeneveld testified that he "[did not] know how the disciplinary system works in terms of staff." (Tr. 19). Further, Mr. Groeneveld said that if a disciplinary measure arose, he "believe[d] [he] would have input in terms of the disciplinary infraction;" however, he would "present [it] to the Director of Administration." (Id.) Also, although, Groeneveld testified that he has set some internal policies, he also conceded that all the policies had to be approved by the Assistant Director of Administration. (Tr. 29). In conclusion, the record demonstrates, and the Court finds that Mr. Groeneveld lacked the authority to hire or fire or discipline. Groeneveld's duties, are merely routine and clerical; his position need not be excluded from the bargaining unit.
 Confidential Employee
The plaintiff further argues that the Clerical position is that of a confidential employee. As such, plaintiff contends that the position should not be included in the bargaining unit. The defendants disagree with plaintiff's position, contending that the individual in the clerical position is not a confidential employee.
Like supervisors, confidential employees are excluded from membership in collective bargaining units. Barrington SchoolComm, 608 A.2d at 1136. The policy, of course, is rooted in fairness. As stated in Barrington School Committee "it would be unfair for an employee who is entrusted with advance knowledge of his or her employer's labor relations policies to be able to share this information with a union that serves as that employee's collective bargaining representative. Id. InBarrington School Committee our state Supreme Court adopted the National Labor Relation Boards "labor nexus" test for determining whether or not an employee's position is confidential. Id. That test specifically excludes two categories of confidential employees from collective bargaining. Those categories of confidential employees include those (1) "`who assist and act in a confidential capacity to persons who formulate, determine, and effectuate management polices in the field of labor relations'" and (2) those who "`regularly have access to confidential information concerning anticipated changes which may result from collective bargaining negotiations.'" Id.
Upon reviewing the record and pertinent case law, this Court concludes that the plaintiff's confidential employee argument is specious. First, as stated above, Mr. Groeneveld is not a supervisor. There is no indication that he is or will be involved in formulating, determining, and effectuating management polices in the field of labor relations. As such, the clerical position does not meet the first prong of the labor-nexus test. Finally, there is no indication that the clerical employee falls within the second prong of the labor nexus test. Plaintiff's evidence with respect to which employees would be involved in the bargaining process is speculative at best. There is no way of knowing what positions would actually be involved in the collective bargaining process.
 Compliance with G.L. § 28-7-9 (b)(5)
The plaintiff now argues that the board's failure to comply with the statutory time periods outlined in G.L. § 28-7-9
(b)(5) requires a reversal of the board's decision. Specifically, plaintiff contends that the formal hearing, which this Court notes plaintiff attended without objection, See generally,Caldarone v. Zoning Board of Review, 74 R.I. 196, 60 A.2d 158
(R.I. 1948), should have been held no later than November 12, 1994 and that the board's decision should have been issued no later than July 2, 1995. The defendants disagree with plaintiff's position, arguing (1) that the time frame provisions in G.L. § 28-7-9 (b)(5) are directory and not mandatory, and (2) that the plaintiff's failure to raise this issue before the board precludes argument before this court.
Section 28-7-9 (b)(5) of the Rhode Island General Laws provides:
 "All charges of unfair labor practices and petitions for unit classification shall be informally heard by the board within thirty (30) days upon receipt of the charges. Within sixty (60) days of the charges or petition the board shall hold a formal hearing. A final decision shall be rendered by the board within sixty (60) days after hearing on the charges or petition is completed and a transcript of the hearing is received by the board."
Although the Rhode Island Supreme Court has interpreted the language of Section 28-7-9 (b)(5) as requiring both informal and formal hearings, the court has not determined whether or not the time frame provisions of the statute are mandatory or directory.Rhode Island Department of Corrections v. Rhode Island StateLabor Relations Board, 703 A.2d 1095 (R.I. 1997). As such, this Court looks to other cases wherein statutory language seemingly required that specific actions be taken within a statutory time period.
In Providence Teachers Union v. McGovern, 113 R.I. 169,319 A.2d 358 (1974), the Rhode Island Supreme Court had the occasion to interpret the language contained in a collective bargaining agreement. The language in controversy required that "`arbitrators shall call a hearing within ten (10) days after their appointment * * * .'" Id. at 363. In finding that the time frame provision was directory rather than mandatory, the court noted that "provisions so designed to secure order, system and dispatch are generally held directory unless accompanied by negative words." Id. at 364. The court classified the provision as being relative to a "matter of procedure." Id.; compare Clarkev. Morsilli, 714 A.2d 597 (R.I. 1998) (language contained in G.L. § 36-14-12 (c) requires ethics commission to determine whether probable cause exists, to support ethics complaint, within set statutory time limits as time limits serve to apprise the investigated party of the commission's findings).
In Washington Highway Dev. v. Bendick, 576 A.2d 115 (R.I. 1990), the Rhode Island Supreme Court interpreted language contained in G.L. § 2-1-22 (c). That statute provided: "`following a public hearing, the director shall make his decision on the application and shall notify the applicant by registered mail, his attorney and any other agent or representative of the applicant by mall of his decision within aperiod of six (6) weeks.'" Id. at 115 (quoting § 2-1-22 (c)). Citing Providence Teachers Union, supra, and Beauchesne v. DavidLondon Co. 118 R.I. 651, 375 A.2d 920 (1977) (failure of the Workers' Compensation Commission, to render a decision in accordance with statutory time provision, did not invalidate award), the court held that the time frame provision of §2-1-22 (c) was directory and not mandatory. The court noted that the legislature had declined to affix, to this portion of the statute, a provision providing for sanctions for failure to meet the statutory time frame. Id. at 117.
After reviewing § 28-7-9 (b)(5) and relevant case law, this Court finds that the time frame provisions of § 28-7-9
(b)(5) are directory and not mandatory. As in ProvidenceTeachers, the time frame provisions of § 28-7-9 (b)(5) are clearly meant "to secure order, system and dispatch." ProvidenceTeachers, 319 A.2d at 364. There is no language demonstrating an intent to make compliance a prerequisite to action or which serves to invalidate a tardy hearing. Id.; See also, WashingtonHighway, 576 A.2d 116. Furthermore, the statute does not contain a limiting provision. See Cabana v. Littler, 612 A.2d 678 (R.I. 1992) (statute containing an affirmative direction followed by a limiting provision, but not later than, makes the affirmative direction mandatory). In conclusion, plaintiff's substantial rights have not been prejudiced by the non compliance with the time-frame provisions of § 28-7-9 (b)(5).
 Conclusion
After a review of the entire record this Court finds that the board's decision is supported by substantial, reliable and probative evidence of record and is not affected by error of law. Substantial rights of the plaintiff have not been prejudiced. Accordingly, the decision of the Board is affirmed.
Counsel shall submit an appropriate order for entry.